NATIONAL TELEPHONE CO. OF WEST VIRGINIA v. KENT et al.

(Circuit Court, N. D. West Virginia. September 26, 1907.)

INJUNCTION—RIGHT TO PRELIMINARY INJUNCTION—AIDING UNLAWFUL ACTS OF STRIKING WORKMEN.

A bill by a telephone company against defendants, one of whom was the editor of a newspaper, and the others officers of a labor organization, *held* to state facts which entitled complainant to a preliminary injunction, where it alleged that defendants had entered into a conspiracy with striking workmen formerly employed by complainant, pursuant to which the strikers had abused, intimidated, and assaulted employés of complainant, cut its wires, and otherwise so injured its equipment that it could not

furnish proper service to the public, and that defendants, through the newspaper and by means of a circular issued by the labor organization, were encouraging such unlawful acts and inciting the public to boycott complainant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 302–306.]

In Equity. On demurrer to amended bill.

The complainant telephone company filed a bill, complaining: That William Kent and a great number of other defendants, electrical workers, members of a labor union, had formed and organized a conspiracy to tie up the telephone and telegraph business of the plaintiff and of the Central District & Printing Telegraph Company; that in pursuance of the said conspiracy they all quit work and organized a strike; that the company employed other workmen to fill their places, whereupon the defendants pursued, abused, threatened, and assaulted the men who had taken their places; that the defendants cut a great number of the company's cables and lines and drilled holes and poured acid into other cables, injured and destroyed a great deal of the plaintiff's property, and intimidated its employés so that they were unable to repair the injury done. It is also alleged that the plaintiff is engaged in the business of carrying messages by telephone and telegraph from Wheeling, in the state of West Virginia, to various other states in the United States. A great number of affidavits supporting the averments of the bill were filed, and on the bill and affidavits a preliminary injunction was granted.

At a later date the plaintiff filed an amended and supplemental bill, incorporating all of the averments of the original bill, and alleging, further: That Walter B. Hilton, the editor and proprietor of a newspaper known as the "Wheeling Majority," J. T. Hecker, Harry B. Corcoran, and H. B. Wessel, officers of the Ohio Valley Trades & Labor Assembly, had joined the conspiracy alleged in the original bill; that said Hilton had published in several issues of this paper matter obviously intended to make the injunction ineffective and to make effective a boycott which the conspirators named in the original bill, with the aid of the said Ohio Valley Trades & Labor Assembly, had inaugurated against the complainant. Copies of the paper containing these publications were exhibited with the amended bill.

The amended bill further alleges that Harry Corcoran, J. T. Hecker, and H. B. Wessel, as officers of the said trades assembly, had issued and caused to be circulated a boycott circular against the complainant, which circular was exhibited with the amended bill.

It is further alleged in the amended bill that the said Hilton, Hecker, Corcoran, and Wessel, having joined in the conspiracy and combination alleged in the original bill, threatened by the circulation of the said newspaper, the circulation of the said boycott circulars, and by soliciting, persuading, threatening, and intimidating the complainant's patrons, to injure the complainant's business. The amended bill and the original bill allege irreparable injury and the insolvency of the defendants. On the amended bill and exhibits and affidavits a preliminary injunction against Hilton, Hecker, Corcoran, and Wessel was granted. These defendants demur to the amended bill on the ground that a sufficient cause for the preliminary injunction is not presented.

John J. Conniff and Alfred Caldwell, for plaintiff.
Charles A. Goodwin and John P. Arbenz, for defendants.

DAYTON, District Judge (orally). The questions of law involved in this case have arisen so frequently within the past few years that court and counsel alike have become familiar with the principles arising for consideration, and most of us are quite familiar with the precedents established in the leading cases. I have since the granting of

the preliminary injunctions taken occasion to review the cases, and, being familiar with the averments of the original bill and the amended bill, I am prepared to pass upon the demurrer now. Counsel for these new defendants, Hilton and the officers of the Ohio Valley Trades & Labor Assembly, have very ably presented their case as it appears from their view point, but to my mind the principles of law applicable to the case, as interpreted by the Supreme Court of the United States and the various United States Circuit Courts of Appeals in like cases, are not in accord with the view presented by counsel for these defendants. And it is equally plain to me that the amended bill, to which this demurrer is interposed, presents with clearness and certainty a state of facts which, being undenied, afford sufficient grounds for the injunction which has been granted.

Here is an original bill in which it is charged that a great number of persons named as defendants formed a conspiracy for the purpose of coercing this and another telephone company by organizing a strike and by threats, menaces, and even by assault preventing others who desired to work from taking their places, and for the purpose of unlawfully injuring and destroying the complainant's telephone lines and property. In this bill it is further alleged that the defendants, in pursuance of the conspiracy, did actually cut, injure, interfere with, and destroy a great many of the complainant's telephone lines, and that they pursued complainant's employés with opprobrious epithets, calling them "scabs," and like offensive names, and even assaulted them. It is alleged in the amended bill that these new defendants, Hilton, Hecker, Corcoran, and Wessel, the three last mentioned acting in their capacity as officers of the Ohio Valley Trades & Labor Assembly, did subsequently to the granting of the preliminary injunction, granted upon the prayer of the original bill, join the conspiracy alleged in the original bill, and that they did, in pursuance of the said conspiracy, print and distribute a boycott circular, which appears among the exhibits to the amended bill, and that the defendant Hilton published in his paper certain matters intended to explain the carefully worded circular and to make the boycott inaugurated effective. Several copies of the newspaper are filed as exhibits with amended bill. The original bill is made a part of the amended bill, and these pleadings, with the exhibits filed, being for the purposes of this demurrer uncontradicted, make a plain case in which the defendants are charged with conspiring together for the expressly avowed purpose of unlawfully injuring the complainant's business by persuading, threatening, and coercing its patrons and its employés, and by unlawfully cutting its lines and injuring and destroying its property.

Counsel for the defendants, in the very able arguments presented, have very aptly said that this is an age of combinations. It is an age of combinations—combinations of capital and combinations of labor. These combinations, so long as they are kept within the bounds of the law, are certainly lawful, are in many instances beneficial to the persons interested, and may be, in some cases, of benefit to the general public; but when a combination of capital is made for unlawful purposes, or, being made for an avowed lawful purpose, seeks to accomplish its purpose by unlawful methods, it becomes the duty of the

courts to restrain the unlawful practices and to punish the unlawful acts. Likewise, when a combination of labor is made for unlawful purposes, or, being made for an avowed lawful purpose, seeks to accomplish its purpose by unlawful methods, it becomes the duty of the courts to restrain the unlawful practices and to punish the unlawful acts. The law knows no distinction between the rich and the poor, recognizes no distinction between unlawful acts of combinations of capital and unlawful acts of combinations of labor. The same principles applying to one must apply to the other, and when a combination of laborers is organized for unlawful purposes, or, being organized for lawful purpose, employs unlawful methods, it will be suppressed by the courts, its unlawful acts restrained, and its crimes punished as promptly and as effectively as like combinations of capital are suppressed, restrained, and punished.

There is further involved here, after considering the rights of the complainant company and the rights of the defendants, the rights of those citizens who desire to exercise their God given right to earn their bread by the sweat of their brow in the employment of this telephone company. It is charged that the defendants threatened, abused, pursued, and even assaulted these men, who were doing no wrong, but were merely exercising their right to work upon terms satisfactory to them; yet they were made to suffer the persecution of these defendants, and their rights, as it is charged, were denied them. There is to be considered also the rights of the general public. It appears from the bill that this company and another company are engaged in the interstate commerce of carrying messages between the states, and that the conspiracy and combination complained of sought to interfere with and tie up this interstate commerce. This being a public business by a "quasi" public corporation, the rights of the public are involved and are not to be interfered with by any unlawful methods.

It is urged by counsel for the defendants that the injunction interferes with the rights of the press. The injunction granted does not deprive the newspaper in question of any lawful right to publish the truth or express its opinions in a lawful manner, but no newspaper has the right to publish any matter intended to aid wrongdoers in accomplishing a wrongful purpose or doing unlawful things, or to aid unlawful combinations in making effective an unlawful conspiracy. Some newspapers, certainly the one involved in this case, have misconstrued the freedom of the press until they seem to interpret the right to be a license to publish what may please them, even though the publication should be an express violation of the law. There is no intention on the part of the court to interfere with the freedom of the press, but this court is not ready to accept the theory that the freedom of the press means a right to advocate crime or to encourage the violation of the law.

The laborers in the organization, appearing as defendants in this case, have the right to organize for lawful purposes and to proceed to accomplish their purposes by lawful methods; but when they resort to force, violence, and destruction of property, coercion of peaceable citizens, combinations, and conspiracies to injure property and interfere with business by threats, menaces, and boycotts, as has been charged in

this case, they lose the moral support of the public and bring upon themselves the condemnation and restraining as well as the punishing power of the court.    They approve the application of these principles to combinations of capital, and they cannot be heard to complain of the application of the same principles to their own combinations, when they step beyond the bounds of the law.

Applying these principles to this case, and considering the bill as being uncontradicted, I have no hesitation whatever in promptly overruling the demurrer, and an order to that effect may be now entered.